IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| ALBERT B. KORB, | ) |
| | ) |
| Plaintiff | ) 1:18-CV-00042-RAL |
| | ) |
| vs. | ) RICHARD A. LANZILLO |
| | ) UNITED STATES MAGISTRATE JUDGE |
| SGT. HAYSTINGS, | ) |
| | ) MEMORANDUM OPINION GRANTING |
| Defendant | ) DEFENDANT HASTINGS' MOTION FOR |
| | ) SUMMARY JUDGMENT |
| | ) |
| | ) IN RE: ECF NO. 135 |

Defendant's motion for summary judgment [ECF No. 135] is pending before the Court. For the reasons explained below, the motion will be granted.

I.      Procedural Background

Plaintiff Albert B. Korb ("Korb"), an inmate at the State Correctional Institution at Albion ("SCI-Albion"), acting pro se, commenced this civil rights action against Defendant Sgt. Haystings ("Hastings")[1] and other employees of the Pennsylvania Department of Corrections ("DOC") in February of 2018. *See* ECF Nos. 1, 9. The procedural history of this case is lengthy. For purposes of this motion, however, a brief summary of the relevant filings will suffice.

Upon remand from the Court of Appeals for the Third Circuit, Korb was permitted to file an Amended Complaint. *See Korb v. Hastings*, 2021 WL 2328220 (June 8, 2021); ECF No. 94.

---

[1] Korb incorrectly spelled Defendant Hastings' name in the caption. The Court will use the correct spelling as provided by the Defendant. *See* ECF No. 136, p. 1, n.1.

1

Korb's Amended Complaint named DOC employees Mike Clark, Sgt. Hastings, and John Wetzel as Defendants. ECF No. 94, at p. 2. The Defendants answered Korb's Amended Complaint (*see* ECF No. 98) and subsequently moved for judgment on the pleadings as to certain claims. *See* ECF No. 99. The Court granted the motion as to all claims against the Defendants in their official capacities and all claims against Defendants Wetzel and Clark. *See* ECF No. 120. This order left Korb's Eighth Amendment excessive force claim against Hastings as his sole remaining claim.

After the close of discovery, Hastings moved for summary judgment (ECF No. 135). His motion was accompanied by a brief (ECF No. 136) and a Concise Statement of Material Facts (ECF No. 137). Hastings' exhibits included a video recording of the incident upon which Korb bases his claim against him. *See* ECF No. 139 (Exhibit 4). Korb filed a response in opposition to the motion for summary judgment (*see* ECF No. 143), but did not file a responsive concise statement.

II.   Factual Background

Before recounting the material facts of this case, the Court notes that Korb's failure to file a responsive concise statement violates Local Rule 56.C.1. This rule requires a party opposing a motion for summary judgment to file a responsive concise statement that (1) responds to each numbered paragraph of the movant's concise statement, admitting or denying the facts asserted in each such paragraph; (2) states the record basis for each denial of fact asserted and properly supported in the movant's concise statement; and (3) states, in separately numbered paragraphs, any additional material facts (with record support) upon which the nonmovant relies in opposing the motion. *See* LCvR 56.C.1. Courts within the Western District of Pennsylvania require strict compliance with the provisions of Local Rule 56. *See, e.g., Coleman v. Tice*, 2018 WL 5724125,

at *2 n. 3 (W.D. Pa. Oct. 10, 2018), *adopted by* 2018 WL 5722316 (W.D. Pa. Nov. 1, 2018); *First Guard Ins. Co. v. Bloom Services, Inc.*, 2018 WL 949224, at *2-3 (W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny County Airport Authority*, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017). This strict compliance applies equally to pro se plaintiffs and those represented by counsel. *See, e.g., Peay v. Sager*, 2022 WL 565391, at *1–2 (W.D. Pa. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 562936 (W.D. Pa. Feb. 24, 2022).

A non-moving party "faces severe consequences for not properly responding to a moving party's concise statement." *Hughes*, 2017 WL 2880875, at *1. Any alleged material facts "set forth in the moving party's Concise Statement of Material Facts ... which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E. While courts provide some leniency to pro se litigants when applying procedural rules, the Court "is under no duty to provide personal instruction on courtroom procedure or to perform any legal chores for the [pro se litigant] that counsel would normally carry out." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). Nor may pro se litigants ignore procedural rules that apply to parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Accordingly, the Court deems admitted any properly supported statement of material fact in Hastings' Concise Statement to which Korb has failed to respond. *See* LCvR 56.E. However, the Court will consider any facts properly alleged in Korb's pro se responses that specifically contradict Hasting's statement of facts, to the extent that they are supported by the record. *Peay*,

3

2022 WL 565391, at *2 (citing *Boyd v. Citizens Bank of Pa., Inc.*, 2014 WL 2154902, at *3 (W.D. Pa. May 22, 2014) (stating that "[t]o the extent Plaintiff's statement of 'fact' specifically controverts Defendant's, the Court will consider these facts in determining whether summary judgment should be granted")).

The factual background of this case is not complex. On January 30, 2018, Korb was called to a meeting on the A-B Housing Unit. *See* ECF No. 137, ¶¶ 18-19. Korb arrived at the office around 5:30 PM. *Id.*, ¶ 20. The reason for the meeting was DOC officials' concerns about the unsanitary condition of Korb's cell and the expectation that Korb would clean it. *Id.*, ¶¶ 23-24. In response, Korb became "upset" and raised his voice. *Id.*, ¶ 25. Hastings ordered Korb to calm himself. *Id.* Korb then attempted to leave the meeting prior to its conclusion. *Id.*, ¶ 26. To stop him, Hastings "took hold of Korb's left arm" and turned Korb from the doorway in an attempt to get him to return to the office. *Id.* ¶ 27. During this interaction, Korb's body came into contact with the door jam. *Id.* at ¶ 28. Hastings then ordered Korb to return to his seat, which Korb did. *Id.*, ¶ 29. The meeting then concluded and Korb left the unit office. *Id.* ¶¶ 30-31.

Korb characterizes his interaction with Hastings differently. He contends, for example, that Hastings physically assaulted him. *See* ECF No. 143, p. 2. Korb's Amended Complaint alleges that Hastings "violently – brutally put his hands on me, pushed-twisted me against door frame and ordered me back into office." ECF No. 94, p. 3.

The record includes a security video recording of the incident. *See* ECF No. 139. The video exhibit is ten minutes and fifteen seconds in duration. A careful review of that recording reveals the following:

At 6:58 Korb enters the video frame.[2] Then, at 7:02, Korb opens the unit office door and enters the office. At 7:10, the video shows Korb shutting the office door. Next, at 7:36, someone opens then shuts the office door. At 7:40, Korb opens the office door and starts to exit.



*Figure 1: Korb entering the unit office*

The action challenged by Korb in his Amended Complaint starts at this point. Hastings appears on the video at 7:43. He takes Korb by the arm in an apparent effort to stop Korb from exiting the unit office. As Hastings turns Korb to re-enter the unit office, Korb briefly contacts the doorframe. At 7:43-48, Hastings takes Korb back into the unit office and at 7:53, Hastings escorts Korb to a chair, and Korb sits down. Then, at 8:27, Korb rises from his chair. At 8:45, Korb opens the unit office door and walks, unaccompanied and unassisted from the office. At 8:48, Korb exits from camera range and does not reappear on the video for the remainder of the

---

[2] The time index of the video footage used herein is defined in minutes and seconds. Thus, a notation of 7:05, for example, means seven minutes and five seconds into the video.

recording. The video shows that Korb interacted with Hastings near the doorframe for approximately ten seconds (7:43 until 7:53).



*Figure 2: Korb and Hastings interact in the door frame*



*Figure 3: Korb exiting the unit office*

III.   Standard of Decision

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to

interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

IV.   Discussion and Analysis

Korb's sole remaining claim is that Hastings used excessive force against him during their encounter in the unit office on January 30, 2018, and thereby violated his Eighth Amendment right to be free from cruel and unusual punishment. In an excessive force case, the "core judicial inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically done to cause harm." *Hudson v,. McMillian*, 503 U.S. 1, 6-7 (1992). The court considers several factors in determining whether a correctional officer's use of force was excessive within the meaning of the Eight Amendment. These include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312

8

(1986)). In addition, the extent of the inmate's injury must be more than de minimis. *See Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018).

Where the events at issue have been captured by a video recording, the court must consider that evidence in determining whether any genuine dispute of material fact remains for trial. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). A court must view the facts in the light depicted in the video. *See id.* (relying on a video recording in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape."). If the videotape "refutes an inmate's claims that excessive force was used against him, and the videotape does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is entirely appropriate." *Smalls v. Sassaman*, 2019 WL 419421, at *8 (M.D. Pa. Sep. 4, 2019) (citing *Tindell v. Beard*, 351 Fed. Appx. 591 (3d Cir. 2009)). *See also McCullon v. Saylor*, 2013 WL 1192778, at *4 (M.D. Pa. Mar. 4, 2013) ("[I]n assessing ... claims in a case where an encounter is captured on videotape we are mindful of the fact that when 'videotape refutes [an inmate's] assertion that defendant[s] used excessive force,' or when the 'video shows that [an inmate] did not suffer any physical distress' ... we should conclude 'viewing the evidence in the light most favorable to [the inmate], no reasonable finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically' and may enter summary judgment on the excessive force claim.") (quoting *Tindell*, 351 Fed. Appx. at 596).

At the outset, the Court notes that it is questionable whether Hastings used force against Korb at all. As seen in the video recording, Hastings merely placed his arm on Korb's arm in an attempt to return him to the unit office. While turning, Korb's body briefly contacts the doorframe. Hastings does not push, shove, or otherwise use any material force against Korb.

9

Thus, the video evidence clearly shows that any force applied to Korb was de minimis. Nevertheless, because the video does show Hastings placing his hands on Korb's person and, at or near the same moment, Korb's body briefly contacting the unit office's doorframe, the Court will consider each of the *Whitley* factors to determine whether the force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

Regarding the first factor, there is no question that some application of force was necessary. Korb admits that he reported to the unit office on the day in question, as ordered, to discuss his personal hygiene and the unhygienic conditions of his cell. *See* ECF No. 94, p. 2 ("… a … guard … said to go to AB-SGT's office – unusual but I complied." ). He also admits that "[w]hen Mr. Steely began some pitch about my cell not being clean, without further nonsense from Mr. Steely, I walked out of Sgt.'s office." *Id.*, p. 3. Given Korb's willful noncompliance with instructions and unauthorized departure, some level of force was reasonably necessary to restore compliance and discipline. This factor weighs in favor of summary judgment.

The second factor to consider is the relationship between the need for force and the amount of force used. The reasonableness of a particular use of force must be assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Viewing the video recording in the light most favorable to Korb, it still reveals that Hastings applied minimal force to hold Korb by the arm and stop him from leaving the meeting and that he then turned Korb around to direct him back into the office. Given Korb's unauthorized departure from and resulting disruption of the meeting, coupled with the fact that another inmate was present, Hastings' brief hold of Korb's

10

arm, and Korb's subsequent contact with the doorframe represented a use of force that was reasonably necessary and calibrated to reassert control and restore compliance. This factor weighs in favor of summary judgment.

The third *Whitley* factor considers the extent of the injury inflicted. Here, Korb contends that because of Hastings' actions, he has suffered "weight loss, extreme depression, loss of rest, sleep anxiety, deep neck-back pain," but he provides no treatment or medical records or any other evidence to substantiate any injury. This lack of evidence of injury undermines Korb's assertion. *See, e.g., Lighty v. Williams*, 2022 WL 4292328, at *5 (E.D. Pa. Sep. 16, 2022). The Court recognizes that, where the use of force at issue is "repugnant to the conscience of mankind," evidence of de minimis injury is sufficient to allow an excessive force claim to survive summary judgment. *Hudson*, 503 U.S. at 10 (internal citation omitted). For example, the district court's entry of summary judgment for the defendants was improper where, although the plaintiff sustained only a few scratches to his neck and wrists, the guards repeatedly punched him in the head, stomped on his back and neck, slammed him into a cell wall, choked, threatened, and nearly rendered him unconscious while he was handcuffed and complying with the guards' orders. *Brooks v. Kyler*, 204 F.3d 102, 104 (3d Cir. 2000); *see also Smith v. Mensinger*, 293 F.3d 641, 644 (3d Cir. 2002) (denying summary judgment where medical records documented no injuries but prisoner alleged he was punched and kicked while he was handcuffed behind his back and not resisting).

The record in the present case materially differs from the facts at issue in cases such as *Brooks* and *Mensinger*. The video belies any gratuitous or material use of force against Korb. Hastings did not punch, kick, or otherwise strike Korb. Korb was not handcuffed or otherwise restrained. And Korb was noncompliant with officers when he was redirected back into the

11

office. Because the record demonstrates no genuine dispute as to these facts, this factor also favors the entry of summary judgment for Hastings.

The fourth factor requires the court to consider the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials. *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). The record demonstrates that Korb departed a meeting with prison officials without authorization and thereby disrupted the meeting in the presence of another inmate. Some force was necessary to restore order and discipline. And, given the presence of another inmate in the small, confined office space, Korb's actions created some risk that the situation could escalate. Hastings addressed these circumstances and associated risks with a minimal use of force. This factor, thus, likewise weighs in favor of summary judgment for Hastings.

Finally, the Court must consider whether Hastings undertook any efforts to temper the severity of the forceful response. Although the record does not include evidence that Hastings attempted to verbally redirect Korb before he placed his hand on him, the video shows that Hastings' response was measured and controlled. Given Korb's abrupt and unauthorized departure from the meeting and Hastings' minimal use of force to return him to the meeting, efforts to temper that use of force appear to have been unnecessary and likely would have been futile. This factor, like each of the others, weighs in favor of the entry of summary judgment.

In summary, each of the *Whitley* factors supports the reasonableness of the force used by Hastings. Viewing the evidence of record, including the video recording, in the light most

favorable to Korb, no reasonable jury could conclude that Hastings utilized excessive force on January 30, 2018. As such, Hastings' motion for summary judgment will be granted.

A separate order will follow.

DATED this 23rd day of September, 2022.

BY THE COURT:

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE